1 | Khinh V. Yam, Esq. (California Bar Number 228219)
1511 E. Anaheim Street #6
2 | Long Beach, CA 90813
Telephone: 562-443-4360
3 | Facsimile:  562-599-2259
Email: lawpro3370@yahoo.com
4 |
Todd S. Dion, Esq. (Rhode Island Bar Number 6852)
5 | (*pro hac to be filed*)
1599 Smith Street
6 | North Providence, RI 02920
Telephone: 401-649-4330
7 | Facsimile:  401-649-4331
Email: toddsdion@msn.com
8 |
**Attorneys for Plaintiffs Octavio Corona and Angelica Corona on behalf of themselves
and all others similarly situated**
9 |
**IN THE UNITED STATES DISTRICT COURT**
10 | **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

11 | **OCTAVIO CORONA AND**                        )
    | **ANGELICA CORONA,**                         )
12 | **on behalf of themselves**                   )
    | **and all others similarly situated**        )
13 |                                               )   **C.A. NO. 2:14-cv-00621-DOC-RNB**
    |                                               )
14 |          **Plaintiffs,**                      )   **PLAINTIFFS' RESPONSE IN**
    |                                               )   **OPPOSITION TO**
15 | **vs.**                                        )   **DEFENDANTS' MOTION TO**
    |                                               )   **DISMISS [DOCUMENT 6];**
16 | **GMAC MORTGAGE LLC,**                         )   **MEMORANDUM OF POINTS**
    |                                               )   **AND AUTHORITIES**
17 | **GMAC MORTGAGE CORPORATION,**                 )
    | **U.S. BANK NATIONAL**                        )   **The Hon. David O. Carter**
18 | **ASSOCIATION, as Trustee for**               )   **Date: May 27, 2014**
    | **GREENPOINT MORTGAGE**                       )   **Time: 8:30 a.m.**
    | **FUNDING TRUST, SERIES 2006-AR6**            )   **Courtroom: 9D**
19 |
20 |          **Defendants.**
    | _____

21 |

22 |

**Notice of Plaintiffs' Opposition
to Defendant's
Motion to Dismiss**                              **1**

1

2   **TO THE COURT, TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

3         Plaintiffs' submit the following Response and Memorandum of Points and Authorities

4   in Opposition to Defendant U.S. Bank National Association, as Trustee for GreenPoint

5   Mortgage Funding Trust, Series 2006-AR6's Motion to Dismiss [Document 6] Plaintiffs'

6   Class Action Complaint. Plaintiffs' Opposition is based upon this Memorandum of Points and

7   Authorities, in Opposition to the afore noted Defendant's Motion to Dismiss Plaintiffs' Class

8   Action Complaint, and any further oral argument received by this Court at the hearing of this

9   matter.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**Notice of Plaintiffs' Opposition
to Defendant's
Motion to Dismiss**

**TABLE OF CONTENTS**

I. INTRODUCTION ....................................................................………1

II. ARGUMENT ...............................…………...................................………2

   1. Legal Standard………………………………………………………………2

   2. Plaintiffs' Allegations…………………………………………....…………………3

   3. Suretyship Arguments………………………………………………….…………4

   4. The Trouble With Trust Agreements………………………………….…………10

   5. Advances on Behalf of Plaintiffs…………………………………………12

   6. Plausibility……………………………………………………..……………...19

   7. Res Judicata and Judicial Estoppel Issues……………………….…………………...20

   8. The Tender Rule……………………………………………………….……………...21

III. SUMMARY & CONCLUSION……………………………………………..21

**TABLE OF AUTHORITIES**

**Case Law**

*Ammeran v. Miller*, 488 F.2nd 1285, 1298-99 (D.C. Cir. 1973)…………………………………7

*Ashcroft v. Iqbal*,556 U.S. 662 (2009) .....................................................................................2

*Belknap Hardware & Mfg. Co. v. Ohio River Contract Co.*, 71 F. 144, 146 (6th Cir. 1921)…..7

*Bell Atlantic v. Twombly,*550 U.S.............................................................................................2

*Belknap Hardware & Mfg. Co. v. Ohio River Contract Co.*, 271 F. 144, 146 (6th Cir. 1921)…7

*Castorr v. Brundage*, 459 U.S. 928, 103 S.Ct.240, 74 L.Ed.2nd 189 (1982)…………………20

*Command Transp. v. B.J.'s Wholesale Club*, 864 F. Supp. 226, 230 (D. Mass. 1994)……….10

*Crowley v. Adams*, 226 Mass. 582 (1917)……………………………………………………18, 19

*Duncan, Fox & Co. v. North and South Wales Bank*, 6 App. Cas. 1 (H.L. 1834)………………7

*Eaton v. Fed. Nat'l Mortg. Ass'n,* 462 Mass. 569, 969 N.E.2d 1118 (2012)………………18, 19

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 292, 294 (2005)…………20

*GASH Assoc. v. Vill of Rosemont*, 995 F.2nd 726, 728 (7th Cir. 1993)…………………………20

*Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir.1997)…………………………………2

*Hampton v. Phillips*, 108 U.S. 260, 263 (1883)…………………………………………………7

*In re Yale Express Sys., Inc.*, 362 F.2d 111, 114 (2d Cir. 1966)………………………………10

*Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)………………………………...3

*Lidderdale's Executors v. Robinson's Executor*, 12 Wheat. 594, 6 L. Ed. 740 (1827)………….7

*Lona V. Citibank, N.A.*, Cal. App. 6th (2011)……………………………………………………21

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)………………………………………...2

*Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994)……………………………………………...2

*National Shawmut Bk. of Boston v. New Amsterdam Cas. Co.*, 411 F.2d 843 (1st Cir. 1969) …6

*Pearlman v. Reliance Insurance Company*, 371 U.S. 132, 137 (1962)…………………………7

*Scheuer v. Rhodes*, 416, U.S. 232, 236 (1974)…………………………………………………2

*Stockton, Supra,* (1957) 148 Cal.App.2d At P. 564………………………………………21

*Sundheim v. Philadelphia School District*, 311 Pa. 90, 101, 166, 365, 369-370 (Pa. 1933)……7

**Restatements**

*Restatement (Third) Of Suretyship* § 1(1) (1996)…………………………………………..5

*Restatement (Third) Of Suretyship & Guaranty* § 1(1)(B)…………………………………..10

*Restatement (Third) Of Suretyship & Guaranty* § 1(2)…………………………………….8

*Restatement (Third) Of Suretyship* §§ 18………………………………………………….5

*Restatement (Third) of Suretyship* § 28…………………………………………………….7

*Restatement (Third) of Suretyship & Guaranty* § 58…………………………………….7

*Restatement of Security* § 104……………………………………………………………5

**State Laws**

California Civil Code § 2932………………………………………………………...18

California Civil Code § 2924………………………………………………………...18

California Commercial Code § 3602……………………………………………………18

**Misc.**

*73 Am. Jur. 2nd, Subrogation S 1 (1974)*………………………………………………..7

*Black's Law Dictionary* 1482 (8th ed. 2004)…………………………………………...14

*West's Encyclopedia of American Law*, edition 2. (2008)………………………………4, 14

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The Defendant's have filed a Motions to Dismiss the Class Action Complaint (CAC) of the Plaintiffs pursuant to Fed. R. Pro. 12(b)(6) arguing that Plaintiffs have failed to state a claim for relief under the CACts as alleged in the CAC, and also arguing that certain Plaintiffs claims' are barred by res judicata and the *Rooker-Feldman* doctrine. However, as argued in this Opposition, Plaintiffs' have stated claims for relief, res judicata and *Rooker-Feldman* do not apply and accordingly, this Court should deny all Defendant's Motion to Dismiss.

The central question now before this Court is a simple one. Does a mortgagee and note holder have the right to foreclose when they have received all payments due from a third party? Notwithstanding that this simple question is surrounded by complex circumstances, the Trustee and Servicer Defendants have endeavored to increase the complexity of the arguments in support of their opposition, in an effort to obstruct the Court's view of the forest for the trees.

Regardless of the contracts at issue, or the legal doctrines at hand, it is clear that pursuant to well settled Law in the State of Rhode Island, a mortgagee cannot pursue non-judicial foreclosure without acceleration of the sums due. Further, there can be no acceleration if a mortgagee has received payment every month and acceleration is not dependent on the identity of who pays the mortgagee.

The Defendant Servicers and Trustees attempt to argue their way around these facts by hiding behind their Trust Agreements and the language therein, believing that those contracts somehow provide them the ability to operate with impunity simply because their wrongful actions are agreed to among the parties thereto. However, the Law cannot be re-written by contract, regardless of the intent of the parties therein and the rights they seek to enforce.

**Memorandum of Points and Authorities**

1

## II.    <u>ARGUMENT</u>

2

**1.**    <u>**Legal Standard**</u>

3
4

5       A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal

6 sufficiency of the claims asserted in the complaint. *See Ashcroft v. Iqbal*, 129 S. Ct.

7 1937, 1949-50 (2009). Rule 12(b)(6) is read in conjunction with Federal Rule of Civil

8 Procedure Rule 8(a), which requires only a short and plain statement of the claim

9 showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). When evaluating a

10 Rule 12(b)(6) motion, the district court must accept all material allegations in the

11 complaint as true and construe them in the light most favorable to the non-moving party.

12 *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994).

13       To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege

14 "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

15 *Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a

16 'probability requirement,' but it asks for more than a sheer possibility that a defendant

17 has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). To

18 be clear, the issue on a motion to dismiss for failure to state a claim "is not whether the

19 [claimant] will ultimately prevail, but whether the claimant is entitled to offer evidence to

20 support the claims" asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir.

21 1997) (quoting *Scheuer v. Rhodes*, 416, U.S. 232, 236 (1974).

22       Once the defendant objects to a lack of subject matter jurisdiction, plaintiff bears the

23 burden of establishing that the court has subject matter jurisdiction. *Lujan v. Defenders of*

24 *Wildlife*, 504 U.S. 555, 561 (1992). To survive a motion to dismiss under Rule 12(b)(1),

**Memorandum of**
**Points and Authorities**

1  plaintiff must prove that the Court has jurisdiction to hear the case. *Kokkonen v. Guardian Life*

2  *Ins. Co.*, 511 U.S. 375, 377 (1994) ("Federal courts are of limited jurisdiction...It is to be

3  presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the

4  contrary rests on the party asserting jurisdiction.").

5  **2.    <u>Plaintiffs' Allegations</u>**

6

7        Plaintiffs' plainly alleged in their CAC the identities of the Defendants that were the

8  holder of their deed of trust[1] and note (underlying obligation). Plaintiffs' further alleged that,

9  pursuant to contract[2], the identified mortgage servicer Defendants' were required to pay

10  Plaintiffs' scheduled monthly payments of interest and principal to the identified

11  trustee/mortgagee/note holder Defendant, regardless of whether those payments are received by

12  the Servicers from the Plaintiff Borrowers. Plaintiffs' supported their allegations with evidence

13  entered into the Court record as Exhibit the related pages of the prospectus supplement of the

14  mortgage backed trusts at issue, in support of Plaintiffs' allegations that the servicers paid their

15  mortgage payments when Plaintiff Borrowers' do not pay them.

16        Plaintiffs' alleged that in "advancing" their monthly scheduled payments of interest and

17  principal to the trustees/mortgagees/note holders, the Servicer Defendants, took over their

18  obligation under their note as specified in their note at Section 8.

19        Plaintiffs' alleged that no default of their note existed at the time the Defendants'

20  foreclosed Plaintiffs' mortgage and that such foreclosure action, was in violation of the statutes

21  governing foreclosure and Uniform Commercial Code, invalid, void, and without force and

22  effect.

---

[1] The term "Mortgage" is used liberally throughout this document and is meant to also refer to Deeds of Trust when not otherwise specifically referenced.
[2] pooling and servicing agreement; referred to throughout this memorandum as "PSA" or "Trust Agreements"

**Memorandum of**
**Points and Authorities**

1    Pursuant to Rule 8(a)(2), Plaintiffs' allegations are a short plain statement of the facts

2    entitling them to relief. The Court must accept Plaintiffs' allegations as true and view them in a

3    light most favorable to the Plaintiffs. As such, the only question remaining is whether Plaintiffs'

4    claims fail as a matter of law, and despite the Defendants' attempt to downplay the foundation

5    of Plaintiffs' pleadings, as discussed herein, the issues raised by Plaintiffs' pleadings in the

6    CAC are far from settled.

7    **3.      Suretyship Arguments**
8

9    As alleged by Plaintiffs', all PSA's contain "advance clauses" that contractually obligate

10   the mortgage servicer to "advance" all sums of principal and interest due on the notes, to the

11   trust (mortgagee and noteholder), regardless of whether or not those sums were received by the

12   servicer from the borrower.  When a borrower fails to pay, the servicer is contractually

13   obligated to pay the borrower's obligation to the trustee.

14    With respect to the contractual arrangements in private label securitizations regarding

15   delinquency advances, suretyships clearly arise.  As defined in *West's Encyclopedia of*

16   *American Law*, edition 2. (2008), a surety is "An individual who undertakes an obligation to pay

17   a sum of money or to perform some duty or promise for another in the event that person fails to

18   act."

19    The suretyship created by the private label PSAs arises via operation of law when not

20   otherwise specified as such in a PSA. Operation of Law is defined as "[t]he manner in which an

21   individual acquires certain rights or liabilities through no act or cooperation of his or her own,

22   but merely by the application of the established legal rules to the particular transaction." *West's*

23   *Encyclopedia of American Law*, edition 2 (2008).  The *Restatement of Suretyship* clarifies the

24   position of suretyship created via operation of law as follows:

**Memorandum of**
**Points and Authorities**
                                            4

Transactions Giving Rise to Suretyship Status
(1) A "secondary obligor" has suretyship status whenever:
(a) one person (the "principal obligor") owes performance of a duty (the
"underlying obligation") to another person (the "obligee"); and
(b) pursuant to contract, a third person (the "secondary obligor") is subject
to a "secondary obligation," whereby either:
(1) the secondary obligor also owes performance, in whole or in part, of the duty of the
principal obligor to the obligee;

*Restatement (Third) Of Suretyship* § 1(1) (1996).

Upon analysis of the totality of the substantive rights and obligations of the parties to private label PSAs, suretyship principles properly apply, notwithstanding the apparent lack of any surety relationship being expressly stated among the parties therein. The servicer (secondary obligor), pursuant to contract (PSA), owes performance, in whole or in part, of the duty of the principal obligor (mortgagor) to the obligee (trustee). Thus, in private label PSAs, therein arises a situation in which the surety relationship between the obligee (trustee/mortgagee) and secondary obligor (servicer) may not be expressly stated as a suretyship, but a suretyship arises by operation of law based on the contractual obligations of servicer to the trustee in PSAs.

The secondary obligor (servicer) and principal obligor (mortgagor) have no agreement. However, a surety relationship arises via Operation of Law when a third party assumes the obligation of the principal obligor without novation. In such cases, if the secondary obligor is called upon to perform the underlying obligation, the rights of the secondary obligor against the principal obligor result from implied contract or the equitable principles of restitution and subrogation. (See; *Restatement of Security* § 104 & cmt. f; *Restatement (Third) Of Suretyship* §§ 18 & cmt. a, 22 & cmt. a.).

The fundamental structure of this suretyship transaction created by a PSA is triangular: on the corners one finds the trustee/obligee, the mortgagor/principal obligor, and the

**Memorandum of
Points and Authorities**

surety/servicer/secondary obligor. The line running between the obligee and the principal

obligor represents the underlying contract, performance of which is primarily the responsibility

of the principal obligor. However, once the surety/secondary obligor performs, in whole or in

part, the duty of the principal obligor to the obligee, the line between the principal obligor and

the secondary obligor becomes clearly defined and a suretyship is created by Operation of Law

between them.

      The First Circuit has recognized this principle of a surety standing in multiple shoes

when performing as a secondary obligor.  "…the tendency is to think of the surety on Miller Act

payment and performance bonds as standing in the shoes only of the entity it "insures" — the

contractor. So long as this one-dimensional concept prevails, logic compels the surety to be

assessed as merely one of the contractor's creditors, and to be subject to the system of priorities

rationalized by the Uniform Commercial Code. But the surety in cases like this undertakes

duties which entitle it to step into three sets of shoes. When, on default of the contractor, it pays

all the bills of the job to date and completes the job, it stands in the shoes of the contractor

insofar as there are receivables due it; in the shoes of laborers and material men who have been

paid by the surety — who may have had liens; and, not least, in the shoes of the government, for

whom the job was completed." *National Shawmut Bk. of Boston v. New Amsterdam Cas. Co.*,

411 F.2d 843 (1st Cir. 1969).

      While the surety servicers are not "insuring" performance of a construction contract, the

same logic applies here. When making delinquency advance payments to trustees the surety

servicer is standing in the shoes of the Plaintiff obligors. Once the surety does so, it is entitled to

stand in the shoes of the trustee obligee and "is subrogated to the rights of the obligee against

**Memorandum of**
**Points and Authorities**

1    the principal obligor to the same extent as if that co-surety had paid the same funds to the

2    obligee." *Restatement (Third) of Suretyship & Guaranty* § 58 cmt. d,  (1996).

3           Further, when an obligee has obtained two obligors for performance of an obligation,

4    and the obligee accepts performance of the secondary obligor, the underlying debt is discharged

5    and along with it the original obligor from further liability, thereby preventing the possibility of

6    double recovery on the part of an obligee that enjoys the benefits of two obligors. See;

7    *Restatement (Third) of Suretyship*  § 28 cmts. a-b. (1996).

8           Once the servicer stands in the shoes of the principal obligor and pays the obligation to

9    the trustee as obligee, they are subrogated to the rights of the obligee against the principal

10   obligor. "[A] surety who pay's the debt of another is entitled to all the rights of the person he

11   paid to enforce his right to be reimbursed." *Pearlman v. Reliance Insurance Company*, 371 U.S.

12   132, 137 (1962) citing *Hampton v. Phillips*, 108 U.S. 260, 263 (1883); *Lidderdale's Executors*

13   *v. Robinson's Executor*, 12 Wheat. 594, 6 L. Ed. 740 (1827); *Duncan, Fox & Co. v. North and*

14   *South Wales Bank*, 6 App. Cas. 1 (H.L. 1834).

15          Historically, subrogation has been described as the substitution of one person (the

16   surety) in place of another (the creditor) with respect to the others lawful claim or right. *73 Am.*

17   *Jur. 2nd, Subrogation S 1 (1974).* See also; *Ammeran v. Miller*, 488 F.2nd 1285, 1298-99 (D.C.

18   Cir. 1973); *Belknap Hardware & Mfg. Co. v. Ohio River Contract Co.*, 271 F. 144, 146 (6th Cir.

19   1921); *Sundheim v. Philadelphia School District*, 311 Pa. 90, 101, 166, 365, 369-370 (Pa.

20   1933). The substitution occurs when the surety discharges an obligation of the principal to the

21   creditor. The surety then acquires the lawful claims or rights of the creditor.

22          However, once establishing the rights of the parties under the legal doctrines of surety

23   and subrogation as discussed *supra*, two issues arise related to the Plaintiffs' foreclosure. First,

**Memorandum of
Points and Authorities**

1  Plaintiffs' have alleged that it was the trustee mortgagee that foreclosed their mortgage, not the

2  servicers exercising their rights of subrogation, and to that end Plaintiffs' foreclosure was

3  conducted unlawfully and they may bring an action to set aside their void foreclosures.

4      Second, under the statutes regarding foreclosure a default of the underlying obligation

5  must exist prior to foreclosure, and here none existed with respect to the underlying obligation,

6  due to the alleged advanced payments made by the servicers of Plaintiffs' mortgage loan to the

7  trustee/mortgagee/note holder as pled.

8      Suretyship status should be applied to Defendants under the circumstances because

9  Trusts have recourse against servicers for Borrowers' obligations.

10 In clarification recourse is defined as follows;

11     "An obligee has recourse against a secondary obligor with respect to an underlying

12 obligation whenever:

13     (a) the principal obligor owes performance of the underlying
14     obligation; and (b) pursuant to the secondary obligation either (i) the
15     secondary obligor has a duty to effect, in whole or in part, the
16     performance that is the subject of the underlying obligation; or (ii) the
17     obligee has recourse against the secondary obligor or its property in
18     the event of the failure of the principal obligor to perform the
19     underlying obligation; or (iii) the obligee may subsequently require
20     the secondary obligor to either purchase the underlying obligation
21     from the obligee or incur the duties described in subparagraph (i) or
22     (ii).
23         RESTATEMENT (THIRD) OF SURETYSHIP & GUARANTY § 1(2)."

24     The Restatement makes no statement or inference about a secondary obligor being liable

25 under the underlying obligation[3]. Rather it quite clearly states that (a) the principal obligor

26 (Plaintiff Borrowers) owes performance of the underlying obligation. Secondly, section (b)

27 completes supports Plaintiffs' argument that suretyship accurately applies under the

---

[3] In spite of this fact, the Plaintiffs did allege that the servicers became liable under their notes the minute they made the first advance with respect thereto. (See; CAC Id. ¶ 25).

**Memorandum of
Points and Authorities**

1   circumstances as alleged by Plaintiffs, to wit; pursuant to the secondary obligation (Trust

2   Agreements) either (i) the secondary obligor (Servicers) has a duty to effect, in whole or in part,

3   the performance that is the subject of the underlying obligation (i.e. pay the mortgage payment

4   when the Borrower does not pay it). Lastly, the Restatement clearly states; "(b) pursuant to the

5   secondary obligation <u>EITHER</u> (i) the secondary obligor has a duty to effect, in whole or in part,

6   the performance that is the subject of the underlying obligation; <u>OR</u> (ii) the obligee has recourse

7   against the secondary obligor..." (Emphasis Added). Considering that the pursuant to contract

8   (Trust Agreement) which requires Servicers (secondary obligors) to advance mortgage

9   payments of borrowers when those borrowers do not pay (a duty to effect in part the

10   performance that is the subject of the underlying obligation), the obligee, under the

11   circumstances related to the arguments as presented in this case, clearly has recourse, as defined

12   by Restatement authority.

13       The situation is even more pronounced in the context of the Non-Fannie Mae Trust

14   Agreements, which expressly state that the Servicer is *not* required to make any Delinquency

15   Advance if the Servicer determines that it would constitute a "Non-recoverable Advance," or an

16   advance that, in the Servicer's business judgment, would not ultimately be recoverable from late

17   collections or liquidation proceeds from the Borrower.

18       However, Plaintiffs' alleged that their mortgage servicers *did* make Delinquency

19   Advance or Guaranty payments in respect to their mortgage loan, not that they might have. As

20   those allegations must be presumed true and viewed in a light most favorable to the Plaintiffs[4],

21   the Court must accept that Delinquency Advances were made with respect to Plaintiff

22   Borrowers' mortgage loans. In other words, the Servicers allegedly advanced the funds, so they

23   had a duty to advance them – thereby satisfying the underlying obligation – so the Borrowers'

---

[4] Especially in light of the fact that these allegations are well supported by the Trust Agreement.

**Memorandum of**
**Points and Authorities**

9

1  debt was not more than could be recovered by the Servicers' collection efforts, or from

2  foreclosure and sale of the Borrowers' property.

3       Further, the second criterion for suretyship status is that, "to the extent that the

4  underlying obligation or the secondary obligation is performed, the obligee is not entitled to

5  performance of the other obligation." RESTATEMENT (THIRD) OF SURETYSHIP &

6  GUARANTY § 1(1)(b); *see Command Transp. v. B.J.'s Wholesale Club*, 864 F. Supp. 226, 230

7  (D. Mass. 1994) ("Suretyship is the relation which exists where one person has undertaken an

8  obligation and another is also under an obligation or other duty to the obligee, *who is entitled to*

9  *but one performance*.") (emphasis added) (quoting *In re Yale Express Sys., Inc.*, 362 F.2d 111,

10  114 (2d Cir. 1966)). In other words, *an obligee cannot recover more than once on the same*

11  *debt,* yet that is exactly what happens when a mortgagee forecloses on a mortgage that has been

12  paid.

13       At the time of foreclosure or attempted foreclosure of Plaintiff Borrowers' mortgage their

14  monthly mortgage obligations had allegedly been paid by their servicers. As these allegations

15  must be presumed true, upon foreclosure the Defendant Trustee/mortgagee allegedly recovered

16  more than once on the same debt.

17  **4.    The Trouble With Trust Agreements**

18       As duly noted, Plaintiff Borrowers are not party to the Trust Agreement, so their rights

19  that cannot possibly be governed by the Trust Agreement related to their mortgage and note. In

20  fact the only effect the Trust Agreement has had on Plaintiffs' rights is to trample on them.

21       In this case, the contract creating a suretyship is the Trust Agreement, and that

22  suretyship arises via Operation of Law. As argued *infra* these Agreements make clear that

23  Borrowers' debts to the trustee, mortgagee, and note holder are discharged as a result of

**Memorandum of**
**Points and Authorities**

1  Delinquency Advances made by the Servicers. Further, in so much as Trust Agreements

2  "allow" for foreclosure, they do not make it legal for the parties thereto to violate the Law in

3  accomplishment of that remedy, just because the contract among them agrees to do so.

4  The Defendant argues that Plaintiffs' entire legal theory is based on a contractual

5  agreement to which they are strangers. However, Plaintiffs' legal theory is not based on their

6  beneficiary status under the Trust Agreement, or a misreading of it. Delinquency Advance

7  payments are made to Trustees of mortgage backed trusts and that alleged fact is the sole

8  impetus behind Plaintiffs' claims.

9  It matters not whether the Plaintiff Borrowers are strangers to these contracts, or third-

10  party beneficiaries. The Borrowers are not challenging the contracts or their beneficiary status

11  thereunder. The Trust Agreement was entered as Exhibit only as evidence in support of

12  Plaintiffs' allegation that Delinquency Advance payments were in fact made with respect to

13  their mortgage loan.

14  However, notwithstanding the Defendant's mischaracterization of Plaintiffs' intent

15  regarding their entry of the Trust Agreement in the Record, the Defendant's argument is still

16  unavailing, as there is no benefit from the PSAs received by Plaintiffs under the circumstances

17  outlined in the complaint or discussed herein.

18  The Plaintiffs' never alleged that they did not owe the debt they agreed to pay under their

19  note and mortgage. What Plaintiffs' alleged is that the collection method (foreclosure) was

20  unlawful under the circumstances as alleged. The Defendant Mortgage Servicers as sureties had

21  alternate remedies for collection of the delinquent sums owed by obligee Plaintiffs, through

22  collection actions in the appropriate courts. However, the foreclosure conducted vicariously

**Memorandum of
Points and Authorities**

11

1    through the Defendant Trustee mortgagee is not one of those remedies. As such, there is no

2    benefit conveyed to Plaintiffs by the PSAs.

3         Trust Agreement supports Plaintiff Borrowers' allegations that the mortgagee holding

4    thereunder was in fact paid each month. If a mortgagee has been paid the monthly payments

5    due, it cannot legally accelerate and exercise the statutory power of sale, and acceleration of the

6    sums due is not expressly dependent on the identity of who pays said mortgagee.

7         A mortgagee can no more accelerate and move to exercise the statutory power of sale

8    contained in a mortgage after having received and accepted payment due on that mortgage from

9    a mortgagor's uncle, cousin, or friend[5], anymore then they can if a third party mortgage servicer

10   makes that same payment. The bottom line is that under the circumstances alleged in the CAC,

11   Plaintiff Borrowers' mortgage payments were made to the mortgagees and those payments were

12   accepted as such by same.

13   **5.**    **Advances are "On Behalf" of Plaintiffs'**

14        The Defendant strains to argue that Delinquency Advances are not made on Plaintiff

15   Borrowers' behalf[6], preferring to surmise that Delinquency Advances are specifically designed

16   only to maintain a continuous flow of the pro-rata share of the scheduled interest and principal

17   due and payable on the mortgages and notes held by the Trust to each bond/certificate holder. In

18   essence, the Defendant's argue that Delinquency Advance payments aren't payments of

19   borrowers' monthly scheduled interest and principal at all, yet the Defendant Trustee distributes

20   them to bond/certificate holders as such, thereby maintaining the "continuous flow" of the

21   scheduled interest and principal due and payable on the mortgages and notes held by the trust.

---

[5] Mortgagees routinely accept payment from third parties such as family members or friends of borrowers.
[6] Interestingly enough, the Defendants never offer any explanation of on whose behalf Delinquency Advances are being paid. Delinquency Advance and GSE Guaranty payments can only be made on Plaintiff Borrowers' behalf, as those payments cannot possibly be made on anyone else's behalf; there are *no* other parties to the mortgages and notes, which are being paid, on whose behalf such payments could have been paid.

**Memorandum of**
**Points and Authorities**

This of course begs the question; How can you distribute the continuous flow of scheduled interest and principal due to the bond/certificate holders, when you didn't actually receive the scheduled interest and principal payments? The answer is; You cannot.

This sleight of hand has been perpetuated by the mortgage securities industry for decades as a way to ensure that mortgage back securities are desirable as investments, by designing a mechanism that virtually renders the assets of a mortgage backed trust quite literally default proof on a monthly basis, thus producing a marketable security that is virtually guaranteed to pay off for investors each and every month.

The Defendant Trustee, in obvious attempt to have their cake and eat it too, is now confronted with the fact that they can't have it both ways. Either they received and accepted payment of the scheduled interest and principal due from *someone*, thus enabling them to make said distributions to the bond/certificate holders, or they did not.

In order to pay investors their monthly share of scheduled monthly payments of interest and principal received, those scheduled monthly payments of principal and interest must be paid, or you cannot pay them to investors. The Trustee cannot distribute monthly payments received to bond/certificate holders and now claim here that those payments were never made. Advances are payment to the mortgagee of the mortgagor's monthly mortgage obligation, plain and simple.

Additionally, Delinquency Advance payments could not have been made on behalf of any other persons or entities, other than Plaintiff Borrowers'. The note is a contract between the Plaintiff Borrowers and the noteholder, and there are no other parties to the note. The concept of the promissory note is but a simple one. One party pays (obligor), one party receives the

**Memorandum of
Points and Authorities**

13

1  payment (obligee) and they are the only parties in the controlling contract that is at issue under

2  the circumstance as described herein.

3      By acting as sureties when making these payments, the Servicers are undertaking the

4  obligation to pay a sum of money or to perform some duty or promise for another in the event

5  that person fails to act. (See; Definition of Surety, *West's Encyclopedia of Law, supra*).

6  According to *Black's Law Dictionary*, a "surety" is defined as "[a] person who is primarily

7  liable for the payment of another's debt or the performance of another's obligation." *Black's*

8  *Law Dictionary* 1482 (8th ed. 2004).  By creating the contractual obligations outlined in the

9  PSAs, relevant to the discussion herein, the Servicers made themselves liable for the payment of

10 another's debt and the performance of another's obligation, as sureties.

11     Given the simplistic nature of the structure of a mortgage promissory note, it is clear that

12 the only "payment of another's debt" or "performance of another's obligation" that could have

13 possibly been undertaken by the Servicers in the scenario at issue would be that of the obligors

14 on the mortgage promissory notes; the Plaintiff Borrowers. As discussed *supra*, the Servicers, as

15 sureties stand in the shoes of the mortgagors and make the mortgagors' payment to the

16 mortgagee trustee, and due to the suretyship that arises by Operation of Law, as outlined *supra*,

17 between the mortgagors, Servicers, and those payments can only be construed as being made

18 "on behalf" of Plaintiff mortgagors.

19     Moreover, the notes themselves provide clear and unambiguous language regarding the

20 issue of potential third party payments made thereunder. As duly noted in the CAC, Plaintiffs'

21 aptly alleged that standard uniform mortgage promissory notes all state that "any person who

22 takes over these obligations, <u>including the obligations of a guarantor, surety</u> or endorser of this

23 note, is also obligated to keep all of the promises made in this note." (Emphasis Added)

**Memorandum of
Points and Authorities**

1    Fannie Mae's world renowned unconditional guaranty to their trusts makes for excellent

2    example of this concept. Fannie Mae, as guarantor, promises to pay to the trusts they created,

3    the monthly payments of borrowers who do not pay, if the servicer of those mortgages is not

4    required to (or does not) pay those payments according to their Direct Servicing Contracts. (Id.

5    FNMA Mast. Trust Agree., Art. VII sec. 7.5).  As stated in Fannie Mae's Master Trust

6    Agreement, when making this guaranty, Fannie Mae is acting in its capacity as guarantor. (Id.

7    FNMA Mast. Trust Agree., "Recitals" E,). When making these payments, Fannie Mae is taking

8    over the obligations of the note, including the obligations of a guarantor. This fact cannot be

9    construed in any other way. In doing so they take over the obligations of the notes, make

10   borrowers' payments on borrowers' behalf, and they are now obligated to do so under the

11   express terms of the notes.

12    The payments made by the Defendant Servicers as sureties, derives from "*an obligation

13   to pay*" the note, as clearly stated in the express terms of the note. Pursuant to their PSA

14   contractual obligations, Servicers' have "an obligation to pay", "on behalf" of the only other

15   party (obligor) to the controlling contract (note), and in doing so take over the obligations of the

16   note as surety, and are now obligated to keep all the promises made in the note, pursuant to the

17   clear and unambiguous terms of the note.

18    Defendants' argue that Advances do not extinguish the monthly obligation of the Plaintiff

19   Borrowers because the Servicers' intent is only to maintain those cash flows to the

20   bond/certificate holders. However, on closer examination, via the cycle of payments to Trustee,

21   and distribution of those payments by the Trustee to bond/certificate holders, the monthly

22   obligation owed under the mortgage and note can only be characterized as extinguished as to

23   the trustee mortgagee.

**Memorandum of
Points and Authorities**

15

1    The Servicers' only "intent" when making Advances is to merely fulfill their contractual

2    obligation to do so. The contract states that these "advances" are intended to maintain a

3    continuous cash flow to bond/certificate holders each month. In other words, Servicers' are

4    intending that when they pay Delinquency Advances that the bond certificate holders will be

5    paid their pro-rata share of the scheduled interest and principal due and payable on the

6    mortgages and notes. As just discussed above, the trustee cannot pay to bond/certificate holders

7    the "payments" of scheduled interest and principal due and payable on the mortgages and notes,

8    if the trustee didn't receive them. The Servicer "intends" to pay the mortgage payments of

9    Plaintiff Borrowers' so that the bond/certificate holders can get paid their share of the scheduled

10   payments of interest and principal due each month.

11   Once bond/certificate holders are paid their monthly pro-rata shares of the scheduled

12   payments of interest and principal due on the mortgage loans held by a trust, the trustee cannot

13   and does not later recover those distributed payments directly from the bond/certificate holders,

14   and in turn repay the advancing servicer or guarantor monies they advanced. Once those

15   payments are made they are final, and on a monthly basis those payments act to constructively

16   extinguish any monthly obligation owed under the mortgage and note to the holder of those

17   instruments; the trustee mortgagee and note holder.

18   However, this does not mean that Borrowers' are beholden to no one. They still owed the

19   debt they promised to pay. It is *who* they owed the debt to after it has been paid to the

20   mortgagee and note holder that is the defining point of Plaintiffs' claim. Once the monthly

21   mortgage payment was made to, and accepted by, the mortgagee and note holder, the mortgagee

22   had no legal right to foreclose.  The funds advanced for the Borrower's monthly mortgage

23   payment were owed to the party that advanced them. Legally, that party, be it uncle, cousin,

**Memorandum of
Points and Authorities**

16

1    friend, servicer or guarantor, can only recover that money through an action in the appropriate

2    venue, and by statute is precluded from foreclosure as a legal remedy regardless of any deal that

3    has been struck between the "advancing" party and the mortgagee.

4         The advancing servicer cannot legally recover those funds advanced through foreclosure,

5    any more than a third party uncle, cousin or friend that "advanced" payments to pay a

6    borrower's mortgage could. Such an action can only lie in equity, as clearly, foreclosure would

7    be precluded. It is only through the legally flawed mechanism of the trustee/mortgagee taking

8    foreclosure action, then liquidating the security (Plaintiff Borrowers' real property), does the

9    payment advancing surety servicer recover its monies from the liquidation proceeds. By design,

10   the only way for the entire flawed system to work is through wrongful foreclosure.

11        Further, the "unambiguous" language of the Trust Agreement does little to support

12   Defendant's contention that their actions are legal simply because their Trust Agreement

13   "expressly provide for remedy against defaulting borrowers." The Defendant would have this

14   Court believe that statutes can somehow be summarily re-written, indeed overruled, by the

15   language of their Trust Agreement. However, regardless of such hubris, two parties cannot

16   violate the law just because the contract between them states that they agree to do so. Contrary

17   to their argument, a statute cannot be rewritten by contract. Regardless of how Trust

18   Agreements might satisfy the whims of the parties thereto, any part (or parts) therein that

19   violates the Law, violates the Law, irrespective of the intent of the parties and the rights therein

20   they seek to enforce.

21        Trustee mortgagees and note holders have every right to foreclose, should they not

22   receive payment. Under common law and statute, the Trust may foreclose in the event of a

23   default of the monthly obligation owed to them as mortgagee and note holder. However, under

**Memorandum of
Points and Authorities**

1   the circumstances as alleged, they foreclosed, when no default to them existed, and therein lays

2   the controversy, which ought to be tested on the merits.

3          With payments made by the surety mortgage servicers under their contractual

4   obligations with the trustee, the note, the underlying obligation, was <u>not</u> in default. Under the

5   doctrines of surety and subrogation, and the Uniform Commercial Code, the obligation owed to

6   the trustee/mortgagee/note holder is discharged. With no default of the underlying obligation, a

7   mortgagee cannot exercise the statutory power of sale; there can be no acceleration, and no

8   foreclosure. "…a mortgagee has no authority to foreclose if the underlying mortgage debt has

9   been paid. This proposition clearly is true…" *Eaton v. Fed. Nat'l Mortg. Ass'n,* 462 Mass. 569,

10  969 N.E.2d 1118 (2012), See also; *Crowley v. Adams***,** 226 Mass**.** 582 (1917). In foreclosing

11  when the underlying obligation was discharged, the trustees lacked the authority to foreclose

12  and violated California Commercial Code § 3602, and California Civil Code § 2932 and

13  2924(c) *et seq*.

14         Payments are payments, whether by the mortgagor, or the surety, or the guarantors, and

15  merely re-labeling them as "advances" does not change this fact. California law does not allow

16  a default and a foreclosure when monthly payments are made with respect to a mortgage and

17  note.  The notion of the servicers that they should be repaid by the mortgagors on the theory on

18  an unjust enrichment only means that those entities may test those theories in separate tort

19  actions.  California only allows a right to foreclosure when there is not payment to the

20  mortgagee or its successors, the Trustee, who under the circumstances as alleged has been paid

21  by a surety. The payments by the surety meant that there was no violation of the statutory

22  condition, and that the note otherwise had been paid.

**Memorandum of
Points and Authorities**

1    Plaintiffs' have pled that both their note and mortgage was sold, assigned, and transferred

2  to a private label trust. Further Plaintiffs' have pled that either the Defendant Trustee, as

3  mortgagee and note holder, or their mortgage Servicers acting as nominees, on behalf of the

4  Trustee, foreclosed Plaintiffs' mortgage. Servicers were not acting as sureties standing in the

5  shoes of the entity entitled to payment when they foreclosed. As alleged, only the entity allowed

6  to foreclose under California Law, conducted the foreclosure of Plaintiffs' mortgage; the

7  Trustee mortgagee, note holder and/or their nominee acting in an administrative capacity, on

8  their behalf, conducted the foreclosure.

9    However, the Trustee, and/or their nominees acting on their behalf, lacked the authority

10  to foreclose because the underlying obligation was paid. (See; *Eaton, Crowley supra*). and to

11  this end an action may be brought to set aside a void foreclosure.

12  **6.    Plausibility**

13    The notion that if Plaintiffs' theory were accepted by the Court, everyone would get free

14  homes is wholly misplaced. Additionally, nothing could be further from the truth. If Plaintiffs'

15  legal theory were to prevail, all that will happen is that Trustee mortgagees and note holders

16  will have to obey the laws governing foreclosure in order to foreclose. As noted by the

17  Defendant, the Servicers did not have to make Delinquency Advances if they believed them to

18  be non-recoverable. If Servicers are no longer able to recover them through the flawed and

19  illegal method as designed by Trust Agreements, they would no doubt cease to make those

20  Delinquency Advances. Accordingly, if the Trustee, mortgagee, and note holder does not

21  receive the scheduled monthly payments of interest and principal due, a true default of the

22  obligation would exist and the mortgagee may legally accelerate the sums due, exercise the

23  statutory power of sale, and proceed to foreclose. No one would get a free home.

**Memorandum of
Points and Authorities**

7.   <u>**Res Judicata and Judicial Estoppel Issues**</u>

"We do not hold that the application of the principles of res judicata and collateral estoppel is mandatory in every case. They are an expression of the policy of federal courts preferring finality, i.e., that litigation at some time must become final. In the face of more important federal policies, however, the preference for finality might be outweighed by more compelling considerations." *Castorr v. Brundage*, 459 U.S. 928, 103 S.Ct.240, 74 L.Ed.2[nd] 189 (1982).

    Clearly, in the instant action there exist circumstances where the preference for finality is outweighed by more compelling considerations. Plaintiffs' have alleged in the CAC that the Defendants' have illegally foreclosed on their home and there are few injuries a litigant can suffer more damaging.

    Further, in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 292, 294 (2005), the Court held that America's dual system of courts allows for parallel state and federal litigation, and *Rooker-Feldman*, does not support the notion "that properly invoked concurrent jurisdiction vanishes" if a state court reaches judgment on the same or related question while the federal suit remains under consideration. Further the Court held that even if a party attempts to litigate in federal court a matter previously litigated in state court, if the federal plaintiff presents some independent claim. "albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party", then the federal court has jurisdiction. (Id. quoting *GASH Assoc. v. Vill of Rosemont*, 995 F.2[nd] 726, 728 (7th Cir. 1993)).

    Additionally, judicial estoppel should not apply to the Plaintiffs herein as the complaint merely seeks an equitable remedy, and declaratory judgment that the foreclosure of their property was in violation of California Law. There would be no more economic benefit to

**Memorandum of**
**Points and Authorities**

1   Plaintiffs' should they prevail in this Action than they would have had when they made the

2   purported statements in their bankruptcy filings. As such, this Action should not be considered a

3   contingent asset which Plaintiffs failed to disclose in their bankruptcies.

4   **8.    <u>The Tender Rule</u>**

5          The Defendant's further argue that Plaintiffs' claims fail because they have not satisfied

6   the "tender rule" in seeking to set aside their foreclosures. There are, however, exceptions to the

7   tender requirement.

8          In *Lona v. Citibank, N.A.*, cal. App. 6th (2011); "first, if the borrower's action attacks the

9   validity of the underlying debt, a tender is not required since it would constitute an affirmation

10  of the debt. (*Stockton, supra,* (1957) 148 cal.app.2d at p. 564).

11         Here Plaintiffs' plainly attack the validity of the underlying debt, in that they allege the

12  default of their note did not exist at the time foreclosure was enacted and no such defaulted

13  amount was due on their note thereunder. As satisfying the tender rule here would only serve to

14  be an affirmation of the debt owed to the Trustee mortgagee by Plaintiffs, tender here is not

15  required

16                     **III.    <u>SUMMARY & CONCLUSION</u>**

17         Simply put, if my uncle pays my monthly mortgage payment to the mortgagee and note

18  holder and I don't pay him back, my uncle cannot foreclose my mortgage. That right is only

19  afforded the mortgagee/note holder and he cannot foreclose because he was paid. If my uncle

20  makes a deal with the mortgagee to recover the money he "advanced" for my mortgage payment

21  to the mortgagee by having the mortgagee foreclose my mortgage, liquidate my property, and

22  pay back my uncle from the proceeds, having that deal in writing does not make that foreclosure

23  legal.

**Memorandum of
Points and Authorities**

21

1        Plaintiffs' allegations in the CAC provide enough facts to allow the Defendants' notice

2   of their claims so as to enable them to defend. Plaintiffs' well pled allegations, are plausible and

3   supported by evidence. Plaintiffs' have gone far beyond threadbare allegations herein and in the

4   CAC, giving Defendants more than fair notice of the claims. Regardless of Defendant's

5   mischaracterizations, the legality of the alleged foreclosure action against Plaintiffs, under the

6   circumstances as alleged in the CAC, is an issue in controversy that ought to be tested on the

7   merits.

8        WHEREFORE, for the reasons as stated in their Memorandum in Opposition herein, the

9   Plaintiffs respectfully request this Honorable Court deny the Motions to Dismiss of the

10  Defendant.

11

12  Dated March 7, 2014

                                     Respectfully Submitted,

13                                        _/s/ Khinh V. Yam_____ _____

14                                       Khinh V. Yam, Esq.

                                     1511 E. Anaheim Street #6

15                                       Long Beach, CA 90813

                                     Telephone: 562-443-4360

16                                       Facsimile:  562-599-2259

                                     lawpro3370@yahoo.com

17

                                    _/s/ Todd S. Dion_____ _____

18                                       Todd S. Dion, Esq. (*pro hac to be filed*)

                                     1319 Cranston Street

19                                       Cranston, RI 02920

                                     Telephone: 401-942-9924

20                                       Facsimile:  401-942-9925

                                     toddsdion@msn.com

**Memorandum of
Points and Authorities**

**CERTIFICATE OF SERVICE**

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of Los Angeles, State of California, and not a party to the above-entitled cause. On March 7, 2014, I electronically filed the above document(s) using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and will be served by the CM/ECF system. I declare under penalty of perjury that the forgoing statements are true and correct.

Executed on March 7, 2014, at Long Beach, California.

_/s/ Khinh V. Yam_____ _____
Khinh V. Yam, Esq.

**Memorandum of
Points and Authorities**

23